UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ITZCHAK RUBINOV,

                  *Plaintiff*,

– against –

OLGA SUYUNOVA, ADINA MILES, AMBER ADLER, ISABELLA KHAIMOV, JOHN DOE and JANE DOE NYPD POLICE OFFICERS OF THE 70TH PRECINCT, 70TH PRECINCT OF NYPD, and JOHN and JANE DOE,

                  *Defendants*.

**MEMORANDUM & ORDER**
24-cv-04375 (NCM) (LB)

**NATASHA C. MERLE**, United States District Judge:

    *Pro se* plaintiff Itzchak Rubinov filed this action against defendants for alleged conduct relating to protests against him. Compl., ECF No. 1. The Court grants plaintiff's request to proceed *in forma pauperis* ("IFP"). IFP Appl., ECF No. 2. For the reasons stated below, the action is **DISMISSED**. Plaintiff is granted leave to amend his complaint within thirty (30) days of this Order.

## BACKGROUND

    Plaintiff alleges that his wife, defendant Olga Suyunova, and defendants Adina Miles and Isabella Khaimov published defamatory and slanderous information about him on social media. He alleges the defendants intended to "galvaniz[e] the Orthodox Jewish community to engage in a severe harassment and intimidation" of him in order to pressure plaintiff into giving his wife a Get, a Jewish divorce document. Compl. ¶¶ 9–12. He claims that Miles posted "descriptions stating that [he] committed sexual abuse and was a child molester" and has "sexual relations with men." Compl. ¶¶ 13–14. Plaintiff

1

asserts that Miles and Khaimov also published contact information for him and his family members, "and requested their followers to contact me and harass and intimidate me." Compl. ¶¶ 21, 26. He claims that some of the posts advocated violence against him, including "threats to beat me up and statements implying that my wife should become a widow, suggesting someone should kill me." Compl. ¶ 24. Plaintiff claims that Miles hired a bus displaying a moving screen that included a picture of him, "labeling [him] as similar to a terrorist." Compl. ¶ 23.

Plaintiff alleges that Miles and Khaimov also organized protests, including one outside his home, in which hundreds of people assembled to pressure him to give his wife a Get. Compl. ¶ 15. He claims that the protests were illegal because they used loudspeakers, "which New York City law requires special permits for." Compl. ¶ 15.

Plaintiff asserts that the New York Police Department ("NYPD"), "consistent with their customary practice regarding members of the Orthodox Jewish community in Brooklyn, did not arrest or disperse these two illegal protests." Compl. ¶ 16. He claims that he called the NYPD on June 16, 2024 "in regards to the protest, but they only came 2 hours later and then inexplicably left without dispersing the protest or leaving any police presence," Compl. ¶ 20, "even though they claimed to state that someone was assaulted and even arrested a counter-protester," Compl. ¶ 58. Plaintiff claims that the NYPD has a close relationship with a neighborhood watch group in the Orthodox Jewish community and that "the NYPD has been ordered to stand down and allow illegal protests to take place outside the homes of Orthodox Jewish men for the purpose of intimidating these men to give their wives a Get." Compl. ¶ 20.

After filing this action, plaintiff requested *pro bono* representation and an "interim order compelling Defendants Adler, Massry, and Miles to promptly remove all

inflammatory and defamatory posts concerning me from their social media accounts."[1] ECF No. 5.

## STANDARD OF REVIEW

Courts are required to give special consideration to *pro se* litigants, those individuals who represent themselves in court. This means that they are not expected to meet the same standards required for formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).[2] In giving *pro se* complaints special consideration, the Court must look for the strongest arguments in the complaint. *Id.*; *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008).

Nevertheless, a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). If the Court finds any possibility that "a valid claim might be stated" and amendment is not futile, the Court must give the *pro se* plaintiff an opportunity to amend the complaint. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000).

Moreover, a plaintiff seeking to bring a lawsuit in federal court must establish that the court has subject matter jurisdiction over the action. Federal courts have limited subject matter jurisdiction, restricting the types of cases they can hear. *See Funk v. Belneftekhim*, 861 F.3d 354, 371 (2d Cir. 2017). There are two types of federal subject matter jurisdiction: federal question jurisdiction, which requires a claim based on a

---

[1]   Plaintiff's complaint does not include allegations against any defendant with the surname Massry.

[2]   Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

3

federal law, *see* 28 U.S.C. § 1331, and diversity jurisdiction, which requires a lawsuit with a value of greater than $75,000 and in which no defendant lives in the same state as the plaintiff, *see* 28 U.S.C. § 1332. The plaintiff bears the burden of establishing either type of subject matter jurisdiction. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). If the Court "determines it lacks subject matter jurisdiction," it must "dismiss the complaint in its entirety." *Do No Harm v. Pfizer Inc.*, 96 F.4th 106, 121 (2d Cir. 2024) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).

## DISCUSSION

### I.   Federal Criminal Claims

Plaintiff brings claims pursuant to two provisions of federal criminal law, 18 U.S.C. § 1951 and 18 U.S.C. § 1964. Both claims fail.

The Hobbs Act, 18 U.S.C. § 1951, criminalizes the obstruction of interstate commerce via robbery and extortion. However, the Hobbs Act does not include a private cause of action permitting individuals to bring civil claims against perpetrators, and federal courts have not found any such implied cause of action. *See, e.g., Bey v. Troutman & Sanders, LLP*, No. 19-cv-05013, 2019 WL 2918028, at *1 (S.D.N.Y. July 8, 2019) ("Plaintiff also cannot bring a private right of action under the Hobbs Act."); *Barge v. Apple Computer, Inc.*, 164 F.3d 617, 617 (2d Cir. 1998) (summary order) ("[N]o private right of action exists under the Hobbs Act."). Accordingly, plaintiff's claims under 18 U.S.C. § 1951 are dismissed for failure to state a claim.

In contrast, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), codified at 18 U.S.C. § 1961–1968, is the rare criminal statute that provides a civil cause of action for private individuals harmed by criminal RICO activity. The statute provides: "Any person injured in his business or property by reason of a violation of section 1962 of

4

this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit." 18 U.S.C. § 1964(c). In addition to showing that a business or property was injured, a plaintiff must show that defendants violated 18 U.S.C. § 1962, such as by showing (1) that defendants were employed by, or associated with, an enterprise affecting interstate commerce; and (2) that they participated in the conduct of the enterprise's affairs through a pattern of predicate acts of racketeering activity. 18 U.S.C. § 1962(c).

Plaintiff fails to state a valid RICO claim. Plaintiff attempts to make out the "affecting interstate commerce" prong of a RICO claim by alleging that certain defendants posted on social media against him, including providing protest information, contact information for plaintiff and his family, calls to action to "pressure" plaintiff, and comments with "threats of violence." Compl. ¶¶ 8, 10–15, 21–22, 24. Even if communications on social media supported an allegation that conduct affected interestate commerce, plaintiff fails to plausibly allege the other requirements. Specifically, plaintiff does not allege that he suffered an injury to business or property. Further, the only alleged predicate acts he claims are "organizing intimidation protests formed for extortion . . . to give my wife a Get." Compl. ¶ 45. Since extortion requires the unlawful transfer of property, and plaintiff has not alleged that defendants sought to acquire his property, he has not established that defendants committed a pattern of racketeering activity. Accordingly, plaintiff's cause of action under 18 U.S.C. § 1964 is dismissed for failure to state a claim.

## II. Constitutional Claims

Plaintiff brings claims under 42 U.S.C. sections 1983 and 1985, alleging violations of his constitutional rights. Both constitutional claims fail.

### A. Section 1983

Section 1983 requires that a plaintiff show that the alleged harm was "committed by a person acting under color of state law," and that the action "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). Section 1983 does not usually apply to claims against private individuals or private organizations. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.").

Defendants Olga Suyunova, Adina Miles, Amber Adler, and Isabella Khaimov (collectively, the "Private Defendants") appear to be private individuals who, as alleged, engaged in private conduct. Even taking the allegations of veiled threats and spreading false information as true, plaintiff has not pled how such conduct by the Private Defendants violates his constitutional rights. Plaintiff therefore fails to plausibly plead a claim against the Private Defendants under Section 1983.

The remaining defendants, unidentified NYPD officers and the 70th Police Precinct (collectively, the "Police Defendants"), are plausibly state actors. However, the NYPD and its precincts lack capacity to be sued. Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter § 396 ("Section 396");

*see, e.g.*, *Williams v. John*, No. 23-cv-09583, 2024 WL 1468112, at *3 (E.D.N.Y. 2024) (dismissing complaint against 106th Precinct pursuant to Section 396); *Valdiviezo v. City of New York*, No. 14-cv-04897, 2014 WL 4638932, at *4 (E.D.N.Y. Sept. 16, 2014) (dismissing claim against 66th Precinct pursuant to Section 396). Because Section 396 precludes plaintiffs from bringing claims against a New York City Police Department precinct, plaintiff's claim against the 70th Precinct must also be dismissed for failure to state a claim.

As to plaintiff's allegation that that the Police Defendants failed to disperse a protest at plaintiff's request, arrested an unidentified counter-protester who is not a party in this lawsuit, and had a close relationship with a community group that plaintiff does not allege was involved in this action, this conduct fails to plead a claim under Section 1983. *See* Compl. ¶¶ 16–20.

Plaintiff alleges that the Police Defendants did not disperse the protestors outside of his home because they were "discriminat[ing] against [him] based upon [his] religious stance not to give [his] wife a Get." Compl. ¶ 61. Plaintiff's conclusory allegation fails for a myriad of reasons, including that he does not allege the police knew him, his ethnic or religious background, or that police were aware of the reason for the protests. Further, he does not even allege that the protestors were violent or placed him in danger. At most, the alleged facts assert that protestors may have been a nuisance to plaintiff.

Moreover, even if the protestors were more than a mere nuisance, the Fourteenth Amendment does not require a state to "protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 195, 197 (1989) ("As a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due

7

Process Clause."). "[P]olice officers have no . . . general duty to provide public services or protection to individual citizens." *Morris v. City of N.Y.*, No. 14-cv-01749, 2015 WL 1914906, at *5 (E.D.N.Y. Apr. 27, 2015); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 766, 768 (2005) (holding no entitlement to police action where not explicitly created). Plaintiff has not alleged that the Police Defendants affirmatively placed him in danger or had any special duty to him when he called the police and they failed to disperse the protest.

As to the other two allegations, plaintiff does not establish that he has standing to litigate any alleged constitutional violations on behalf of the unidentified third party protestor who was arrested. *See N.Y. State Citizens' Coal. for Child. v. Poole,* 922 F.3d 69, 75 (2d Cir. 2019) (noting bar on third-party standing may be overcome where plaintiff demonstrates a close relationship to the injured party and a barrier to the injured party's ability to assert its interests). Nor does he plausibly allege that his rights were harmed by the arrest of the protestor, merely noting his belief that the third-party "was simply displaying signs" against giving a Get. Compl. ¶ 16.

Similarly, plaintiff's allegation that his rights were violated by the NYPD's ties to a community watch group lacks merit. Plaintiff argues that the NYPD has a deferential, close relationship with an Orthodox Jewish watch group such that the NYPD broadly does not interfere when people are protesting and thereby infringed his religious choice to not grant a Get. Compl. ¶ 19–20. This is unpersuasive, requiring the Court to make too many inferences between the community watch group, the NYPD and the alleged harm. Furthermore, the police have no general duty to protect any one specific citizen against another, and the NYPD was arguably refraining from interfering with the right to protest.

8

Plaintiff's alleged harm as pled is thus implausible. Therefore, plaintiff fails to plausibly plead a claim against the Police Defendants under Section 1983.

### B. Section 1985

Section 1985 addresses conspiracies to interfere with an individual's constitutional rights and may include conspiracies that involve private parties. In relevant parts,[3] Section 1985 requires the alleged conspiracy "be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). In order to state a claim, a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Id.*

First, plaintiff's allegations of conspiracy are conclusory and vague. He alleges that the purpose of the conspiracy was to treat him "differently than every other Orthodox Jewish Man in this country and every other man in this country acting according to their religious beliefs." Compl. ¶ 52. However, he does not allege a single fact to support a conspiracy between the defendants that would deprive plaintiff of his constitutional rights. Plaintiff alleges only that defendants Suyunova and Miles "conspired" to publish a video and the Police Defendants arrested a counter-protester "after conspiring with

---

[3] Since plaintiff does not allege that he holds an office and the duties were hindered by defendants, the Court does not construe him to be raising a claim under Section 1985(1) or the court-related first clause of Section 1985(2).

9

Defendants Miles and Suyunova." Compl. ¶¶ 11, 16. Neither incident, even taken as alleged, involves plaintiff's constitutional rights.

Notably, and as was relevant to his RICO and Section 1983 claims, plaintiff fails to allege that his person or property was injured by defendants or that defendants deprived him of any cognizable right or privilege. Plaintiff thus fails to plausibly allege a conspiracy claim under Section 1985 and those claims are dismissed.

III.   State Laws

In this case, plaintiff asserts state claims against some defendants for emotional distress, defamation, and slander. Since plaintiff's federal claims are dismissed, the Court declines to exercise supplemental jurisdiction over the state claims. *See* 28 U.S.C. § 1367(c). The Court also finds no diversity jurisdiction present since plaintiff has not pled and likely could not plead a diversity of citizenship between him and the defendants. The Court thus lacks subject matter jurisdiction for the state claims and dismisses them. *See* Fed. R. Civ. P. 12(h)(3).

## CONCLUSION

Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 is granted solely for purposes of this Order. For the reasons stated above, all of plaintiff's claims are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3). The Court further declines to exercise supplemental jurisdiction of plaintiff's state law claims.

Plaintiff's request for *pro bono* representation and an interim order until resolution of this case are denied as moot.

Because plaintiff is proceeding *pro se*, the Court has considered giving him an opportunity to further amend his pleading. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir.

2011). The Court grants plaintiff leave to file an amended complaint within thirty (30) days of this Order.

If plaintiff does not file an amended complaint within thirty (30) days, the Clerk of Court shall be directed to enter judgment and close the case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

                                                                                     */s/ Natasha C. Merle*
                                                                                   NATASHA C. MERLE
                                                                                   United States District Judge

Dated:        October 31, 2024
                 Brooklyn, New York