UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ITZCHAK RUBINOV,

                *Plaintiff*,

– against –

OLGA SUYUNOVA, ADINA MILES, AMBER ADLER, ISABELLA KHAIMOV MASSRY, JOHN DOE and JANE DOE NYPD OFFICERS OF THE 70TH PRECINCT, 70TH PRECINCT OF NYPD, JOHN and JANE DOE, and CITY OF NEW YORK,

                *Defendants*.

**MEMORANDUM & ORDER**
24-cv-04375 (NCM) (LB)

---

**NATASHA C. MERLE**, United States District Judge:

       Plaintiff Itzchak Rubinov filed this action on June 28, 2024. Compl., ECF No. 1. By Memorandum & Order entered October 31, 2024 (the "October Order"), the Court granted plaintiff's request to proceed *in forma pauperis* and dismissed his complaint *sua sponte* with leave to file an amended complaint. Oct. Order, ECF No. 7. Plaintiff filed an Amended Complaint ("AC") on November 12, 2024. AC, ECF No. 8. As the Amended Complaint fails to cure the deficiencies of the original complaint or state a claim for relief, the action is hereby dismissed.

## BACKGROUND

       In his initial complaint, plaintiff alleged that his wife, defendant Olga Suyunova, and defendants Adina Miles and Isabella Khaimov published defamatory and slanderous information about him on social media "with the intent of galvanizing the Orthodox

Jewish community to engage in [] severe harassment and intimidation" of him in order to pressure plaintiff into giving his wife a Get, a Jewish divorce document. Compl. ¶¶ 9–12. The original complaint also alleged that unidentified police officers of the New York Police Department ("NYPD") failed to disperse protests organized by defendants Miles and Khaimov. Compl. ¶¶ 16–17, 20, 58–59. Plaintiff alleged that defendants' actions violated New York state law and violated his federal constitutional rights and federal laws related to extortion and racketeering.

The Court's October 31, 2024 Order dismissed plaintiff's complaint for a number of reasons, including its failure to state a claim. *See* Oct. Order 4–10. Nonetheless, the Court granted plaintiff leave to file an Amended Complaint. The Amended Complaint repeats plaintiff's factual allegations and legal claims, without curing the deficiencies in the original complaint. *See* AC.

## DISCUSSION

### I. Federal Claims

#### A. RICO Claim

As in his original complaint, plaintiff's Amended Complaint alleges a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), codified at 18 U.S.C. § 1961–1968. AC ¶¶ 41–50. In its October Order, the Court dismissed plaintiff's RICO claim because plaintiff (1) failed to allege that defendants were employed by, or associated with, an enterprise affecting interstate commerce, (2) failed to allege that he suffered an injury to business or property, and (3) failed to establish a predicate act of racketeering activity. *See* Oct. Order 4–5.

Plaintiff attempts to cure these defects in his Amended Complaint. First, plaintiff

2

attempts to establish the predicate act of "extortion." AC ¶¶ 1, 47, 50. He asserts that he has "a property right" in the Get, because it is a "physical document" that can only be procured by paying a professional fee to a Jewish Orthodox scribe. AC ¶ 48. He asserts that the Get "is my rightful property," but he does not allege that he ever procured or possessed this physical document. AC ¶ 50. He claims that defendants organized "intimidation protests formed for extortion, namely, inducing me under fear of bodily, monetary and psychological harm to give my wife a Get." AC ¶ 47. He acknowledges that "[d]efendants did not ultimately succeed in coercing the Get from me." AC ¶ 50.

These allegations fail to state a claim. The Hobbs Act, 18 U.S.C. § 1951, criminalizes the obstruction of interstate commerce via robbery and extortion. It defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951.[1] Under New York law, "[a] person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him a fear that, if the property is not so delivered, the actor or another will" commit acts such as causing physical injury to some person in the future, causing damage to property, or exposing a secret or publicizing an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule. N.Y. Penal Law § 155.05(2)(e).

Plaintiff has not alleged that he was the victim of extortion as defined by the Hobbs Act or New York Penal Law. "Extortion" requires the unlawful transfer of property, and

---

[1] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

based on plaintiff's Amended Complaint, defendants did not obtain any property from plaintiff. Indeed, according to plaintiff, the divorce document does not exist. Plaintiff's argument that he has a property interest in a document that he did not obtain and was not induced to hand over is unclear to say the least. Nevertheless, even construing plaintiff's allegations liberally, his inconsistent and conclusory statement that he holds the Get "as a property right due to its tangible form. . . and its substantial religious and economic value," does not make it so. AC ¶ 48. Therefore, plaintiff has not established that defendants committed any of the predicate acts of racketeering activity under RICO.

Additionally, plaintiff's conclusory allegation that defendants' actions affected interstate commerce because defendants either supported or transmitted, "via interstate commerce (Instagram)," threats and intimidation towards plaintiff is not sufficient to establish the "affect interstate commerce" prong of a RICO claim. *See* AC ¶ 44; *see also O'Neill v. NYU Langone Hosps.*, No. 23-cv-04679, 2024 WL 4216501, at *9 (E.D.N.Y. Sept. 17, 2024) (plaintiff's conclusory statement that defendants' activities affected interstate commerce by using facilities of interstate commerce "such as wire transfers of money, telephone calls, and emails" was not sufficient to plead the interstate or foreign commerce element of a RICO violation); *Lally v. Leff*, No. 17-cv-04291, 2018 WL 4445152, at *5 (E.D.N.Y. Sept. 18, 2018) (conclusory assertions regarding mails, wires, and interstate commerce are insufficient to allege a nexus to interstate commerce).

Accordingly, plaintiff's RICO claim is dismissed.

### B. *Municipal liability*

Plaintiff's original complaint named unidentified NYPD officers and the 70th Police Precinct as defendants. Compl. ¶ 7. In the Court's October Order, the Court found that

4

plaintiff was precluded from bringing claims against the police precinct by Section 396 of the New York City Charter, which requires that all actions and proceedings must be brought "in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter § 396; *see also* Oct. Order 6.

As against the unidentified individual police officers, the Court found that plaintiff had not alleged that the police officers placed him in any danger or that they had a special duty towards the plaintiff when they failed to disperse the protest in response to his call. Oct. Order 7–8. To the extent that plaintiff continues to bring § 1983 claims against the unidentified police officers and the 70th Police Precinct, those claims are dismissed for the reasons stated in the Court's October Order. Oct. Order 6–8 (finding that the NYPD and its precincts lack the capacity to be sued, and that individual police officers did not place him in any danger or have any special duty to him).

Plaintiff's Amended Complaint now brings a Section 1983 claim against the City of New York, alleging that the City is liable pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).[2] AC ¶ 63. A plaintiff asserting a Section 1983 claim against a municipality must allege three elements: "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020); *see also Monell*, 436 U.S. at 691. In general, plaintiffs can demonstrate a municipal

---

[2] Plaintiff's Amended Complaint continues to list "NYPD 70 Precinct and John and Jane Doe Officers of the 70th Precinct of the NYPD" as defendants, and does not list the City of New York as a defendant. *See* AC ¶ 7. However, in consideration of plaintiff's *pro se* status, and because plaintiff's fifth cause of action pursuant to 42 U.S.C. § 1983 specifically alleges that the City of New York is liable under *Monell*, the Court considers this claim.

policy or custom through allegations regarding "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *20 Dogwood LLC v. Vill. of Roslyn Harbor*, No. 22-cv-04047, 2023 WL 3571239, at *7 (E.D.N.Y. May 19, 2023) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)), *aff'd*, No. 23-cv-00930, 2024 WL 1597642 (2d Cir. Apr. 12, 2024); *see also Deferio v. City of Syracuse*, 770 F. App'x 587, 590 (2d Cir. 2019) (summary order) (noting a fourth avenue for establishing municipal liability: failure to train employees).

Plaintiff alleges that the City of New York is liable for "demonstrating approval and deliberate indifference to the illegal and violent protests conducted outside [his] residence." AC ¶ 63. Plaintiff's complaint also alleges that the "NYPD has displayed a long-standing pattern of aiding protestors" by arriving to a protest and leaving shortly thereafter. AC ¶ 62. Plaintiff alleges that this pattern occurs at protests in various neighborhoods in Brooklyn aimed "at intimidating and coercing Orthodox Jewish men . . . ." AC ¶ 61. While plaintiff's Amended Complaint alleges that the NYPD engages in a "pattern" of action, the Amended Complaint fails to cure the defect identified in plaintiff's original complaint, which is that the non-action of police officers does not constitute a constitutional violation that would satisfy the third prong of a *Monell* claim. *See* Oct. Order 7–8 (finding that plaintiff's allegations that individual police officer defendants failed to intervene in the protests against plaintiff were not actionable constitutional violations); *see also Ekeoma v. City of New York*, No. 23-cv-00946, 2024 WL 4225709, at *11 (E.D.N.Y. Sept. 18, 2024) ("A police officer's failure to take a report or to investigate are not actionable."); *Wilson v. City of New York*, No. 18-cv-07301, 2020 WL 5709200, at *5 (E.D.N.Y. Sept. 24, 2020) (noting that police officers "have discretion to . . .initiate

6

arrests, and are charged with acting for the benefit of the public, not private citizens").

As "there can be no municipal liability without an underlying constitutional violation," *Doe v. Levittown Public Schools Board of Education*, No. 23-cv-08334, 2025 WL 317548, at *5 (E.D.N.Y. Jan. 28, 2025), and because plaintiff's complaint fails to allege that his constitutional rights were violated by the individual police officers' inaction, plaintiff's complaint fails to allege a *Monell* claim against the City of New York. *See also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (finding that where an individual police officer "inflicted no constitutional injury . . . it is inconceivable" that the municipality could be liable for the individual police officer's actions); *Demosthene v. City of New York*, 831 F. App'x 530, 534 n.3 (2d Cir. 2020) ("[I]n light of the absence of an underlying constitutional violation, the district court correctly dismissed the claim against the City pursuant to *Monell* . . . ."); *Morales v. City of New York*, 752 F.3d 234, 238 (2d Cir. 2014) ("[H]aving properly dismissed [plaintiff's] underlying constitutional claims against the individual NYPD defendants, the District Court also properly dismissed [plaintiff's] claim against the City and the NYPD for municipal liability under *Monell*.").

As plaintiff has failed to plausibly allege an underlying deprivation of his constitutional rights, plaintiff's *Monell* claim against the City of New York is dismissed.

### C. Section 1985 claims

Section 1985 creates a private cause of action, allowing plaintiffs to bring claims for conspiracies to interfere with an individual's constitutional rights. As noted in the Court's October Order, Section 1985 creates a cause of action for conspiracies that are "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). In order to state a claim, a plaintiff

must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Id.*

In the October Order, the Court dismissed plaintiff's claims brought pursuant to Section 1985 because they were "conclusory and vague," failed to allege a conspiracy, failed to allege that plaintiff's person or property was injured, and failed to allege that defendants deprived him of any cognizable right or privilege. Oct. Order 9–10. Plaintiff's Amended Complaint is similarly conclusory and alleges that defendants conspired to "depriv[e] [him] of the ability to freely engage in religiously protected activities and subject[] [him] to disparate treatment." AC ¶ 66.

Plaintiff claims that unlike "other Orthodox Jewish men and individuals in this country . . . I was denied the right to reside peacefully in my home." AC ¶ 66. Plaintiff's allegation of conspiracy is simply that "[t]he state actor Defendants conspired with Defendants Miles and Suyunova to subtly coerce me into providing a Get by permitting additional protestors to assemble and persist in their intimidation tactics." AC ¶ 68. This allegation is too conclusory to support a claim pursuant to Section 1985. *Cooper v. Swern*, No. 24-cv-06702, 2025 WL 81398 (S.D.N.Y. Jan. 12, 2025) ("Claims under Section 1985(3) must be alleged 'with at least some degree of particularity' and must include facts showing that the 'overt acts which defendants engaged in . . . were reasonably related to the promotion of the claimed conspiracy.'"); *Kelly v. Florence*, No. 24-cv-02279, 2024 WL 5089769, at *8 (S.D.N.Y. Dec. 11, 2024) ("Vague and unsupported assertions of a

claim of conspiracy, either under Section 1983 or Section 1985, will not suffice to state a claim upon which relief can be granted."). Even liberally construing plaintiff's complaint, he fails to plausibly allege that the state defendants, specifically NYPD officers or the NYPD, plotted with any individual defendant to deprive plaintiff of any right or privilege.

Accordingly, plaintiff's Section 1985 conspiracy claim against all defendants is dismissed.

## II.   State Claims

Lastly, plaintiff raises state law claims for intentional infliction of emotional distress, defamation, and civil conspiracy.[3] *See* AC ¶¶ 27–40. However, the Court declines to exercise supplemental jurisdiction over these state law claims now that the federal claims are dismissed. *See* 28 U.S.C. § 1367(c). Plaintiff has also not pled diversity of citizenship between him and defendants, and therefore the Court finds no diversity jurisdiction. The Court thus dismisses the state law claims for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

## CONCLUSION

As the Amended Complaint fails to cure the deficiencies in the original complaint, the action is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)

---

[3] "New York does not recognize an independent tort of conspiracy. . . but does allow a claim for civil conspiracy to connect the actions of separate defendants with an otherwise actionable tort." *ACR Sys., Inc. v. Woori Bank*, 232 F. Supp. 3d 471, 478 (S.D.N.Y. 2017). Here, plaintiff attempts to use the claim of civil conspiracy to connect defendants' actions to the state torts of intentional infliction of emotional distress and defamation. AC ¶ 37. As the Court declines to exercise supplemental jurisdiction over the underlying torts of intentional infliction of emotional distress and defamation, the Court similarly declines to exercise supplemental jurisdiction over plaintiff's claim for civil conspiracy.

9

and for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore denies *in forma pauperis* status for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully requested to enter judgment and close this case and send a copy of the Order and Judgment to plaintiff and note the mailing on the docket.

**SO ORDERED.**

 /s/ Natasha C. Merle  
NATASHA C. MERLE  
United States District Judge

Dated:         February 11, 2025  
               Brooklyn, New York